THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JORDAN L., by and through his
Guardian, Holly M.,
                        :

          Plaintiff,       :
     v.                   :    3:20-CV-00605
                        :    (JUDGE MARIANI)

EAST STROUDSBURG AREA
SCHOOL DISTRICT,       :
                        :
         Defendant.     :

## MEMORANDUM OPINION

### I. INTRODUCTION

Before the Court are cross-motions for judgment on the administrative record with

respect to a claim that Jordan L., a former student in East Stroudsburg Area School District,

(the "District"), was denied a free appropriate public education ("FAPE") under the

Individuals with Disabilities Education Act ("IDEA"). Jordan L. brings his claim against the

District by and through one of his guardians, Holly M. ("Plaintiff").

James and Holly M. (collectively, "the Guardians") filed an administrative Due

Process Complaint against the East Stroudsburg Area School District ("the District") alleging

that the District failed to provide their grandson, Jordan L., a FAPE. The Administrative

Hearing Officer concluded that the District had not denied the student a FAPE. Having

considered the parties' briefing and the administrative record, the Court will grant

Defendant's Motion for Judgment on the Administrative Record and deny Plaintiff's Motion for Judgment on the Administrative Record.

## II. STANDARD OF REVIEW

The IDEA permits "[any] party aggrieved by the findings and decision" of the state administrative hearing "to bring a civil action" in "any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). In reviewing the complaint, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The United States Supreme Court has construed 20 U.S.C. § 1415(i)(2)(C) to require a district court to give "due weight" to the administrative proceedings, while being careful to avoid replacing its "own notion of sound educational policy for those of the school authorities [that] they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).

Consequently, a district court's review of a hearing officer's decision in an IDEA case is "subject to a unique standard of review." *N.M. v. Cent. York Sch. Dist.*, No. 09-969, 2010 WL 4867552, at *4 (M.D. Pa. Sept. 10, 2010). "Due weight" requires the district court to conduct a "modified de novo review," under which findings of fact from the administrative proceedings "are to be considered prima facie correct." *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003) (quoting *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 758

(3d Cir. 1995)). Under the standard, a court may disagree with the facts found by a hearing officer but must explain any such divergence from the administrative findings. *Id*. (citing *MM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 530–31 (4th Cir. 2002)). Additionally, "a District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quoting *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995)) (emphasis in original). A hearing officer's conclusions with respect to whether a school district fulfilled its FAPE obligations, whether the Individualized Education Program ("IEP") conferred a meaningful benefit, and whether the IEP is appropriate are questions of fact. *See P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009) (*citing S.H.*, 336 F.3d at 269–70); *see also Carlisle Area Sch.*, 62 F.3d at 526. The party challenging the administrative decision in the district court bears the burden of persuasion. *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012).

In contrast, the district court's review of a hearing officer's findings of law is plenary, and no deference is given to the hearing officer's legal holdings. *See Jana K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 594 (M.D. Pa. 2014) (citing *Warren G. v. Cumberland Cnty. Sch. Dist.*, 190 F.3d 80, 83 (3d Cir. 1999)). A hearing officer's conclusions regarding compensatory education are considered findings of law subject to the district court's plenary review. *See P.P.*, 585 F.3d at 735.

## III. BACKGROUND[1]

### A. Factual Background

Jordan L. is a former student of the East Stroudsburg Area School District who is a student with a disability under the IDEA based on a learning disability, ADHD, and autism. (Doc. 21-1 ¶ 2.) The District is a recipient of federal funds and falls under the purview of the IDEA. (*Id.* ¶ 3.)

Before May 23, 2018, the student had accumulated a total of fifteen (15) days of suspension. (N.T. 90-91, 117-118; S-10 at 2-3.) On May 23, 2018, the student brought a three-inch pocketknife to school and was displaying the knife to other students. (N.T. 43, 139; S-10 at 2.) Following this incident, the District administration ("administration") suspended the student for five (5) days, bringing his total days of suspension to twenty (20) days. (N.T. 36; S-10 at 2.)

On May 31, 2018, a manifestation determination meeting was held to determine if the student's behavior was caused by his disability. (S-10.) The meeting included members of the student's IEP team and the student's community-based behavior technician. (*Id.* at 6.) At this May 31, 2018, meeting, the attendees, including the student's guardians, concluded that the student bringing a pocketknife to school was not caused by or in direct and substantial relationship to his disability. (N.T. 94, 98.) The attendees also concluded that the

---

[1] To remain consistent with the references provided by the Hearing Officer, Plaintiff, and Defendant, the Court will refer to exhibits as "P-1," etc. for the Plaintiff's exhibits; "S-1," etc. for the school district's exhibits; references to page numbers of the transcript of testimony taken at the hearing is hereafter designated as "N.T. ___").

conduct was not caused by the Local Educational Agency's (LEA's) failure to implement the IEP. (S-10 at 4.)

After the May 23, 2018, incident and the May 31, 2018, manifestation determination meeting, the District administration gave notice of a unilateral placement at an interim alternative educational setting for forty-five (45) days due to the weapons violation. (S-20.) The placement began on June 1, 2018, at the District's cyber program and continued there until the end of the 2017-2018 academic year. (N.T. 142-143; S-13 at 51; S-20.) The placement resumed at the beginning of the 2018-2019 academic year on August 27, 2018, at Colonial Academy, operated by the District's Intermediate Unit. (*Id*.)

Before the conclusion of the 45-day placement, James M., the student's grandfather, met with Mr. Catrillo, the principal of East Stroudsburg South High School. (Doc. 14-2 at 8-9; N.T. 143-144, 148.) Mr. Catrillo and James M. agreed to have the student return to the District high school at the beginning of the second marking period, thereby extending the 45-day placement at Colonial Academy. (*Id*.) In recognition of this agreement, the placement at Colonial Academy ultimately concluded on November 7, 2018. (N.T. 142-143; S-13 at 51, S-20.)

On November 8, 2018, an IEP meeting took place to change the student's placement back to the District high school. (S-14.) Holly M., the student's grandmother, approved this recommendation to return to the District High School on the signed Notice of Recommended Educational Placement ("NOREP"). (*Id*. at 53.)

On November 28, 2018, the student sent a text message to a peer stating, "I just want to shoot up the school and die and if I ever get arrested then that's Tyler [SIC] fault I can fight that bitch ain't tough I am I just wanna murder him." (Doc. 21-1 ¶ 2.) The student was also found to be carrying a large spray paint can following a search at the school. (*Id*.) Because of this conduct, the student was suspended for 10 days. (S-15 at 3.)

On December 3, 2018, a manifestation determination meeting to address the November 28, 2018, incident was attended by the student's IEP team, including both of the Guardians. (S-15; N.T. 74.) At this meeting, the participants agreed that the student's conduct on November 28, 2018, was not a manifestation of his disabilities. (S-15 at 6; N.T. 109, 146-147.) After this manifestation determination meeting, an IEP meeting was held where no changes were made to the IEP, as the student was removed by the county juvenile probation department to a placement at George Junior Republic. (S-16 at 2.) On January 28, 2019, the school district expelled the student for one year. (S-17.)

### B. Procedural Background

On June 29, 2019, James and Holly M., the student's grandparents and guardians, filed an administrative Due Process Complaint against the school district. (Doc. 14-12.) The Due Process Complaint alleges that the District failed to provide a FAPE to Jordan. (Doc. 14-12 at 4.)

On December 13, 2019, and January 23, 2020, a Due Process Hearing before Hearing Officer James Gerl was held. At the hearing, testimony was heard from five (5)

witnesses and twenty-five (25) exhibits were admitted for consideration by Hearing Officer

Gerl. (Doc. 14-2.) On March 2, 2020, Hearing Officer Gerl issued his decision denying relief

to Plaintiff. (*Id.*)

On April 9, 2020, Jordan L., by and through his guardian and grandmother, Holly M.,

filed the Complaint at issue and sought to reverse Hearing Officer Gerl's decision and obtain

a reevaluation and compensatory education for the student. (Doc. 1.) On January 15, 2021,

Plaintiff filed a Motion for Judgment on the Administrative Record. (Doc. 20.) On February

12, 2021, Defendant also filed a Motion for Judgment on the Administrative Record. (Doc.

22.) For the reasons set forth below, the Court grants the District's Motion for Judgment on

the Administrative Record and denies Plaintiff's Motion for Judgment on the Administrative

Record.

## IV. ANALYSIS

Each party seeks judgment on the administrative record alone. In appealing Hearing

Officer Gerl's decision to this Court, Plaintiff makes two principal arguments: (1) the student

was denied a FAPE due to untimely and inappropriate manifestation determinations; and (2)

the student was denied a FAPE by the extension of the 45-day interim alternative

educational setting placement without a hearing or NOREP. The District contends that there

were no errors resulting in a denial of FAPE on either of these bases. As the party

challenging the administrative decision, Plaintiff bears the burden of persuasion. *See Ridley*

*Sch. Dist.*, 680 F.3d at 270. For the reasons explained below, the Court agrees with the District.

## A. Manifest Determinations

The parties dispute whether the District properly conducted manifestation determinations. Plaintiff argues that the manifestation determinations were untimely and improper because the District failed to answer all the questions on the forms. (Doc. 21 at 5.) Defendant argues that the manifestation determinations were timely and answered all the requisite questions. (Doc. 23 at 11-13.)

A manifestation determination meeting is necessary when a disciplinary removal of a child with a disability amounts to a "change in placement." 34 C.F.R. § 300.530. A change in placement is a disciplinary removal that exceeds ten (10) consecutive days, or where a pattern of disciplinary removals exceeds ten (10) school days in the school year for behavior that is "substantially similar" to previous incidents. *Id.* Whether a pattern of disciplinary removals constitutes a "change in placement" is determined by the length of each removal, the total duration that the student has been removed, and the proximity of the removal to one another. 34 C.F.R. § 300.536.

In Pennsylvania, there is a fifteen (15) cumulative day threshold after which a disciplinary removal is considered a change in placement. 22 Pa. C.S. § 14.143. If the fifteen (15) day threshold is met, a district is required to convene the manifest determination meeting within ten (10) days of any subsequent disciplinary removal. 34 C.F.R. § 300.530.

8

Under  34 C.F.R. § 300.530(e), the District, the parents, and relevant members of the child's IEP team must determine "(i) If the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or (ii) If the conduct in question was the direct result of the LEA's failure to implement the IEP." 34 C.F.R. § 300.530(e).

As to the May 31, 2018, manifestation determination meeting, Plaintiff asserts that the District improperly delayed conducting a manifestation determination review, arguing that the student had already accumulated twenty (20) days of suspension before the May 31, 2018, review meeting. (Doc. 20 ¶ 8.) The record demonstrates that the student had fifteen (15) accumulated days of disciplinary removal by the time of the student's knife incident on May 23, 2018. (*Id*.) A manifestation determination review was properly scheduled and conducted within ten (10) days following the date when the student exceeded the fifteen (15) day threshold. Therefore, under 34 C.F.R. § 300.530, the District complied with the requirement that it timely conduct a manifestation determination review.

As to both manifestation determination reviews, Plaintiff also contends that the review forms were legally insufficient given that not all questions on the forms were answered. (Doc. 21 at 5-6.) The questions that are legally relevant to procedural sufficiency are whether the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability or if the conduct in question was the direct result of the LEA's failure to implement the IEP. 34 C.F.R. § 300.530(e). Plaintiff's conclusion that the manifestation determination forms were inadequate as a matter of law is without merit.

It is clear throughout the record that the District's manifestation determinations considered both of the required questions. (S-10 at 4; NT 96-98, 105-107, 165-166; Doc. 14-2 at 8, 10.) The record indicates that the Guardians took part in lengthy conversations and set forth meaningful conclusions related to these two questions. (*Id.*) Each of the District's manifestation determinations considered the two necessary questions during discussions. (Doc. 14-2 at 7-8, 9-10, 15.) Additionally, the forms completed for each of the manifestation determinations indicate that the two necessary questions were properly considered. (S-10 at 4, S-15 at 4.) Therefore, the Court finds that Hearing Officer Gerl did not err in finding that the District timely and properly conducted manifest determinations in both instances.

### B. Procedural Requirements for Interim Placement Beyond the 45-day Cap

The Court will next turn to the parties' dispute over the procedural requirements surrounding the extension of the interim alternative education placement beyond the 45-day cap. The parties dispute whether a hearing and written notice were required prior to extending the student's 45-day interim placement. Plaintiff argues that both an administrative due process hearing and written notice via a NOREP were required to extend the placement, while Defendant argues that neither was necessary. (Doc. 21 at 3-5) (Doc. 23 at 10-13.) The Court will address each of these issues in turn. For both issues, the Court must first determine whether the student's extended placement at Colonial Academy

beyond the 45-day cap constituted a "change in placement" that implicates the relevant provisions of the IDEA.

### 1. Change in Placement

The parties dispute whether the student's extended placement beyond the 45-day cap at the interim placement constituted a "change in placement" for the purposes of the IDEA.[2] Plaintiff contends that this determination is relevant for determining whether a hearing and written notice were required. (Doc. 21 at 3-5.) Hearing Officer Gerl did not make a specific determination as to whether the student's extended stay constituted a "change in placement." (Doc. 14-2.) However, the Court finds it necessary to consider whether a change in placement took place that would influence whether a hearing or notice was required.

The Third Circuit has noted that the determination of whether a change in a child's educational routine is a "change in placement" is a fact-specific one. *DeLeon v. Susquehanna Comm. Sch. Dist.*, 747 F.2d 149, 153 (3d Cir. 1984) (Becker, J.) (citations omitted); *see also D.M. v. New Jersey Dep't of Educ.*, 801 F.3d 205, 217 (3d Cir. 2015) (noting that, in other decisions, a child's educational placement does not include the specific school the child attends where that school provided sufficient services to satisfy the

---

[2] The parties do not appear to dispute that, in the context of a manifestation determination meeting following a student's suspension, there is a fifteen (15) cumulative day threshold after which a disciplinary removal is considered a change in placement. 22 Pa. C.S. § 14.143. The parties' dispute arises as to whether, after a change in placement to an interim alternative educational setting, the extension of that interim placement constitutes a "change in placement."

requirements of the student's IEP.) The court in *DeLeon* stated that "the question of what constitutes a change in educational placement is, necessarily, fact specific. . . . Thus, in determining whether a given modification in a child's school day should be considered a 'change in educational placement,' we should focus on the importance of the particular modification involved." *Id*. Rather than a hearing for every minor violation, the *DeLeon* court provided that "the touchstone in interpreting section 1415 has to be whether the decision is likely to affect in some significant way the child's learning experience." *Id*.

Under the *DeLeon* framework, only matters that will significantly impact the child's learning should be considered a change in educational placement for the purposes of the IDEA. *Id*. Consequently, the question in this case becomes a fact specific one: whether, based on the evidence, the student's extended stay at Colonial Academy significantly impacted the student's learning.

The Court finds that, based on the evidence, a reasonable fact finder could not conclude that the extension of the interim placement constituted a "change in placement." Plaintiff provides no persuasive evidence that the student's learning was significantly impacted by the student's extended time at Colonial Academy. (Docs. 1, 21.) Plaintiff does not dispute that the student was given instruction at Colonial Academy that conformed to his IEP. (Doc. 14-2 at 21.) Indeed, at the IEP meeting on November 8, 2018, both of student's guardians and the student agreed that the student would return to his home school on November 9, 2018, with no documented objection to the extended stay. (Doc. 14-2 at 19.) Because

Plaintiff has not demonstrated that the student's extended interim placement significantly impacted the child's learning, the Court finds that the student's extended stay at Colonial Academy following the 45-day cap did not constitute a "change in placement" for the purposes of the IDEA. This conclusion could end the Court's analysis into whether a hearing or NOREP is necessary, given that there was not a change in placement.

Out of an abundance of caution, the Court will nonetheless assume, *arguendo*, that the extended interim placement constituted a "change in placement" for the purpose of addressing Plaintiff's remaining arguments.

### 2. *Placement Beyond the 45-day Cap Without a Hearing.*

Plaintiff argues that the extension of the student's 45-day interim placement at Colonial Academy without a hearing denied the student of a FAPE. (Doc. 21 at 3-4.) Specifically, the parties dispute whether (1) James M. was the student's legal guardian for the purpose of the IDEA and therefore possessed legal authority to authorize the extension of the 45-day placement; and (2) assuming, *arguendo*, that the continuation of the student's placement in Colonial Academy beyond the 45-day cap as prescribed in the IDEA constitutes a "change in placement," the change necessitates a hearing by the Hearing Officer. (Doc. 1 at ¶¶ 7-9; Doc. 21.) The Court will address each argument in turn.

The Court first examines whether James M. was the student's legal guardian for the purposes of the IDEA. The significance of this issue is that Plaintiff contends that James M. did not have the legal capacity to agree to an extension in the duration of the interim

placement. (Doc. 21 at 3-4.) Plaintiff offers no persuasive evidence to suggest that Holly M. was the student's sole legal guardian, but rather restates her conclusion that James M. was not the student's legal guardian. (Docs. 1, 21 at 3.) The District has shown and Hearing Officer Gerl has noted that James M. signed documents acting as the student's legal guardian and parent in the past. (Doc. 14-2 at 19; S-11 at 53, 55; S-16 at 6.) Additionally, Plaintiff's counsel conceded in the administrative hearing that James M. is the student's legal guardian. (N.T. 5.) Aside from restating Plaintiff's conclusion that Holly M. is the sole legal guardian, Plaintiff offers no evidence to dispute Hearing Officer Gerl's determination that both James and Holly M. are the student's legal guardians. (Doc. 21.) Having given "due weight" to Hearing Officer Gerl's determination that both James and Holly M. are the student's guardians, the Court finds his determination to be correct considering that there is no persuasive evidence to the contrary. *See S.H.*, 336 F.3d at 270 (quoting *Susan N.*, 70 F.3d at 758). The Court therefore concludes that Hearing Officer Gerl did not err in finding that both James and Holly M. are the student's legal guardians.

The Court now considers whether the continuation of the student's interim placement in Colonial Academy beyond the 45-day cap would necessitate a hearing by a Hearing Officer if there was a "change in placement." Plaintiff argues that, under 20 U.S.C. § 1415(k)(1)(G), 34 C.F.R. § 300.532(b)(3), 34 C.F.R. § 300.530(g),[3] and the Federal

_____

[3] The Court notes that 34 C.F.R. § 300.530(g) is identical to 20 U.S.C. § 1415(k)(1)(G).

Register commentary[4], a hearing was necessary to extend the interim alternative educational setting placement beyond its 45-day limit. (Doc. 21 at 4.) Defendant argues that a hearing was not required under 20 U.S.C. § 1415(k)(1)(G) because James M. approved of the extension and that there was no denial of FAPE to the student. (Doc. 23 at 7.)

The parties do not dispute that 20 U.S.C. § 1415(k)(1)(G) allows for 45-day interim alternative educational setting placements. Under 20 U.S.C. § 1415(k)(1)(G), a school district can remove a student for a maximum of forty-five (45) days under certain circumstances.

> (G) Special circumstances
>
> > School personnel may remove a student to an interim alternative educational setting for not more than 45 school days without regard to whether the behavior is determined to be a manifestation of the child's disability, in cases where a child—
> >
> > (i) carries or possesses a weapon to or at school, on school premises, or to or at a school function under the jurisdiction of a State or local educational agency.

20 U.S.C. § 1415(k)(1)(G).

Pursuant to 34 C.F.R. § 300.531, "[t]he child's IEP Team determines the interim alternative educational setting for services under § 300.530(c), (d)(5), and (g)." 34 C.F.R. § 300.531. Parents who disagree with the decision to place a student in an interim alternative

---

[4] Plaintiff relies on commentary from the Federal Register to support the argument that a hearing was required under these circumstances. The referenced commentary relates to comments suggesting that *permanent* placements be made prior to the beginning of a new academic year. This discussion is not at issue in the present case. Thus, the Court does not consider this commentary in its analysis of the case before the Court.

educational setting may appeal the decision by requesting a hearing pursuant to 34 C.F.R.

§ 300.532.

> (a) *General.* The parent of a child with a disability who disagrees with any decision regarding placement under §§ 300.530 and 300.531, or the manifestation determination under § 300.530(e), or an LEA that believes that maintaining the current placement of the child is substantially likely to result in injury to the child or others, may appeal the decision by requesting a hearing. The hearing is requested by filing a complaint pursuant to §§ 300.507 and 300.508(a) and (b).

> (b) *Authority of hearing officer.*

> (1) A hearing officer under § 300.511 hears, and makes a determination regarding an appeal under paragraph (a) of this section.

> (2) In making the determination under paragraph (b)(1) of this section, the hearing officer may—

>> (i) Return the child with a disability to the placement from which the child was removed if the hearing officer determines that the removal was a violation of § 300.530 or that the child's behavior was a manifestation of the child's disability; or

>> (ii) Order a change of placement of the child with a disability to an appropriate interim alternative educational setting for not more than 45 school days if the hearing officer determines that maintaining the current placement of the child is substantially likely to result in injury to the child or to others.

> (3) The procedures under paragraphs (a) and (b)(1) and (2) of this section may be repeated, if the LEA believes that returning the child to the original placement is substantially likely to result in injury to the child or to others."

34 C.F.R. § 300.532(a) and (b).

34 C.F.R. § 300.532(a) states that a hearing is necessary when "[t]he parent of a

child with a disability . . . *disagrees* with any decision regarding placement." 34 C.F.R. §

300.532(b)(3) (emphasis added). A parent may request a hearing by filing a complaint

pursuant to §§ 300.507 and 300.508(a) and (b).

> (a) General. Whenever a due process complaint is received under § 300.507 or § 300.532, the parents or the LEA involved in the dispute must have an opportunity for an impartial due process hearing, consistent with the procedures in §§ 300.507, 300.508, and 300.510.

34 C.F.R. § 300.511

Here, both guardians agreed to the student's initial 45-day interim alternative

educational setting placement without requesting a hearing, evidencing that the guardians

were aware that no hearing is required simply because of a change in placement.

Additionally, the student's guardian grandfather agreed prior to the extension of the 45-day

interim placement to allow for the student to remain at Colonial Academy through the end of

the second marking period without any documented request for a hearing. (Doc. 14-2.) Both

guardians approved of the transfer back to the student's home school on November 8,

2018, without filing a due process complaint or raising any documented objection to the

extended stay at Colonial Academy. (*Id*.) Contrary to the procedure laid out in 34 C.F.R. §

300.532 that allows for "a parent of a child with a disability who disagrees with any decision

regarding placement . . . [to] appeal the decision by requesting a hearing", there is no

evidence that either of the guardians filed a due process complaint or documented an

objection to the extension of the student's placement prior to the end of his time at Colonial

Academy.

In making this determination, the Court agrees with Hearing Officer Gerl's factual finding that there is no documented evidence in the record to support the grandmother's claim that she objected to keeping the student in the interim alternative educational setting for longer than the 45-day period. (Doc. 14-2 at 19.) Having given "due weight" to Hearing Officer Gerl's determination, and having considered the record, the Court finds that, assuming *arguendo* that there was a "change in placement," there would have been no requirement for a hearing to be held on the extension of the student's stay at Colonial Academy.

### 3. *Written Notice via a NOREP*

The parties also dispute whether written notice or consent was necessary prior to the extension of the student's placement at Colonial Academy beyond the 45-day cap. Plaintiff argues that written notice via a NOREP was required. (Doc. 1 at 15.) Defendants argue that Plaintiff had already consented to the student's extension of his interim placement, and therefore no NOREP was required. (Doc. 23 at 10.)

20 U.S.C. 1415(b)(3) entitles parents to "written prior notice" when an LEA "(A) proposes to initiate or change; or (B) refuses to initiate or change the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. 1415(b)(3); 34 C.F.R. § 300.503(a). In Pennsylvania, school districts use a Notice of Recommended Education Placement

("NOREP") to provide that written notice. *L.T. v. N. Penn Sch. Dist.*, 342 F. Supp. 3d 610, 614.

Assuming, *arguendo*, that the extension of the student's placement at his interim alternative educational setting beyond the 45-day cap constituted a "change in placement," the Court would agree that a NOREP was necessary prior to extending the student's placement.[5] Nonetheless, the facts surrounding this extension beyond the 45-day cap indicate that the student was not deprived of a FAPE due to this procedural error.

The Supreme Court has developed a two-part test for determining whether a school district has provided a FAPE. There must be a (1) determination as to whether the school district has complied with the procedural safeguards in the IDEA; and (2) an analysis of whether the IEP is reasonably calculated to enable a child to make progress considering the child's circumstances. *Endrew F. by Joseph F. v. Douglas County School District RE-1*, 580 U.S. 386 (2017); *Board of Educ, etc. v. Rowley*, 458 U.S. 178 (1982); *KD by Theresa Dunn and Joseph Dunn v. Downingtown Area School District*, 904 F.3d 248 (3d Cir. 2018).

The only other way to prove a denial of FAPE would be an actionable procedural violation by the District. *See D.S., 602 F.3d at 565* (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007)) (second citation omitted). A "procedural violation is

_____

[5] Defendant argues that 34 C.F.R. § 300.300(b) is evidence that no written notice or consent is necessary because the student's change in placement is not an "initial provision" of special education services. (Doc. 23.) Although, 34 C.F.R. § 300.300(b) is limited in application to "the initial provision of special education and related services to the child," it does not preclude 34 C.F.R. § 300.503(a) from requiring written notice in broader contexts beyond the initial provision of special education and related services to the child.

actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." *Winkelman,* 550 U.S. at 525–26.

Under this test, the record indicates that Plaintiff has not proven a denial of FAPE either through the District's failure to comply with the procedural safeguards in the IDEA or a demonstration that the IEP is not reasonably calculated to enable the student to make progress in light of the student's circumstances. As noted by Hearing Officer Gerl, the only other way to prove a denial of FAPE would be an actionable procedural violation by the District. *See Winkelman*, 550 U.S. at 525-26. While Plaintiff concludes that the Guardians were denied participation rights stemming from the District's failure to obtain their written consent, and that such a denial is a violation as a matter of law, Plaintiff fails to demonstrate a requisite loss of educational opportunity for the student, serious deprivation of the Guardian's participation rights, or a deprivation of educational benefit. *Ridley Sch. Dist.*, 680 F.3d 260; 20 U.S.C. § 1415(F)(3)(E); 34 C.F.R. § 300.513(a).

The record demonstrates that both Guardians were continuously involved in decisions relating to the student's IEP, change of placement, and the extension of the 45-day placement at Colonial Academy. (S-14 at 43, 53, 58; S-15, 16; N.T. 109-110, 113, 143-144, 169.) The Guardians attended and actively participated in multiple meetings relating to the student's IEP, manifestation determinations, and placement. (*Id*.) Despite the District's failure to provide written notice required to extend the student's placement at the interim

alternative educational setting beyond the 45-day cap, the student's guardians were not deprived of their participation rights. The Court finds that, assuming *arguendo* that there was a "change in placement," Plaintiff has not demonstrated that the District denied a FAPE to the student by keeping the student in the interim alternative education setting beyond forty-five (45) days without a hearing.

## V. CONCLUSION

For the reasons explained above, Plaintiff's Motion for Judgment on the Administrative Record (Doc. 20) will be denied. Defendant's Motion for Judgment on the Administrative Record (Doc. 22) will be granted. Therefore, judgment will be entered in Defendant's favor. A separate order follows.

Robert D. Mariani
United States District Judge